IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GEORGE WAYNE SENTERFITT,

      Petitioner,

v.                                   CASE NO. 3:15-cv-562-MCR-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 1, a Petition for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereafter "Petition"). The
Petition stems from Petitioner's September 2012 *nolo contendere* plea to
attempted second degree murder and aggravated assault with a deadly
weapon. Petitioner is serving a total 12-year prison sentence followed by
three years of probation. ECF No. 1. Respondent filed a response and an
appendix with relevant portions of the state-court record. ECF No. 11.
Petitioner filed a reply. ECF No. 15. Upon due consideration of the
Petition, the Response, and the state-court record, the undersigned
recommends that the Petition be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the
Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

# I. State-Court Proceedings

Petitioner's written plea agreement sets forth the maximum sentences for his offenses (15 years for attempted second degree murder and 5 years for aggravated assault). ECF No. 11-3 at 17-23. Petitioner's plea was a "plea straight to court," with no cap or offer by the state. *Id*. at 18. Petitioner acknowledged that he knew the maximum penalties for his charges and that he had reviewed the applicable sentencing guidelines for his charges. Petitioner affirmed that he was satisfied with counsel's representation, and that his attorney had made no promises regarding sentencing nor had Petitioner relied on any representation as to the actual time he would serve. *Id*. at 18-19, 22. Petitioner's counsel, Daniel Campbell, also executed the plea form and certified that he had explained the charges and the maximum penalties for each count, and that no promises or representations had been made to Petitioner about the actual time he would serve. *Id*. at 22.

At the plea hearing, Petitioner affirmed under oath that he read and signed the plea agreement and understood it. *Id*. at 27. He affirmed that there was "no cap or offer" or agreed disposition from the State regarding the sentence. *Id*. at 28. The State confirmed that it would be seeking a

"minimum of a guideline sentence" and that the defense would seek a downward departure from the guidelines. *Id*. at 30. Petitioner stipulated that there was a factual basis for the plea. *Id*. at 31. The court accepted Petitioner's plea as free and voluntary and ordered a presentence investigation. *Id*.

Petitioner's guideline scoresheet called for a sentence of 75 months as the lowest permissible sentence. Prior to sentencing, Petitioner's counsel filed a motion for a downward departure sentence of two years of community control followed by six years of probation, citing several statutory and non-statutory mitigating factors including Petitioner's age (70 at the time of sentencing), mental and physical needs, military service, and expression of remorse. *Id*. at 34-39.

At sentencing the victim, Wernher Ryals, testified that on November 21, 2015, Petitioner appeared at his facility, Mossy Head Auto Parts and Recycling Center. Petitioner had previously purchased an engine from Ryals and "seemed dissatisfied". Ryals had communicated with Petitioner regarding his complaints, and Petitioner told Ryals that he wanted another engine. When Petitioner saw Ryals on the day of the incident he said "oh, you're going to 'F' me today" several times in front of another customer.

Ryals told him to settle down or he would have to leave. As Ryals turned away from Petitioner, Petitioner tried to strike him with a pipe. Ryals evaded him. Petitioner then returned to his truck and drove the truck at Ryals, striking him and causing Ryals to flip over the hood of the truck. Petitioner drove the truck over Ryals' arm, causing severe injury. As Ryals was crouched in an open area, Petitioner again drove his truck at Ryals, striking him in the back. Petitioner attempted to strike Ryals with the truck again but Ryals, clutching his damaged arm, was able to take cover behind some cars. Petitioner fled the scene. Ryals was life-flighted to a hospital in Pensacola. His severe injuries required multiple surgeries and skin grafts. Although he did not lose his arm, he lost the feeling in much of the arm and was permanently impaired and unable to return to his business as of the time of sentencing. *Id*. at 43-65.

Another witness to the incident, Steven Mullins, testified that he saw Petitioner attempt to hit Ryals with a pipe and then strike Ryals with his truck three times. When Petitioner fled the scene, Mullins followed him and called the sheriff's department. Mullins described the aftermath of the incident, including fear regarding whether Ryals would live and fear of further violence by Petitioner or his acquaintances. *Id*. at 69-72. A

surveillance video of the incident was played for the court.  *Id*. at 73.

Ryals' sister, Dwana Neyendorf, testified about the devastating effect of the incident on their family and the period afterward when they did not know whether Ryals would live.  The family stayed in a motel in Pensacola while Ryals was hospitalized.  Neyendorf helped care for Ryals during his recovery, and described the effect of his permanent impairment on his activities.  *Id*. at 73-76.

Another witness to the incident, Conrad Rhodes, testified that he saw Petitioner sneaking up behind Ryals with a pipe.  After Ryals evaded him, Petitioner got in his truck and drove it at Ryals.  Rhodes described seeing "meat just hanging off [Ryals'] arm," exposing the bone, and blood "going everywhere."  *Id*. at 77-78.  Rhodes testified that he had been "looking over [his] shoulder for a year" because Petitioner was out on bond.  *Id*. at 79.

The State then played Petitioner's taped statement made at the Walton County Jail after his arrest.  After being advised of the *Miranda* warnings, Petitioner claimed that Ryals "attacked" him after swearing at him and telling him to leave.  He stated that as he got in his truck Ryals appeared to have a taser in one hand and a pistol in the other.  Petitioner stated that Ryals was "coming at him".  When he tried to turn his truck

around to leave the scrap yard, he may have accidentally hit Ryals.
Petitioner said he then drove to the Sheriff's office to swear out a warrant
against Ryals for threatening his life. *Id*. at 87-97.

Petitioner testified at sentencing in support of his motion for a
downward departure. In addition to reviewing his military service records
and related medical issues, Petitioner testified that he was "very sorry"
because "if I knew I definitely would have went some place else. I could
have just went a mile down the road to the man's brother and he would
have treated me right." *Id*. at 99-109.

A psychologist, Dr. Peter Oases, testified that he evaluated Petitioner
and concluded that he had progressive senile dementia. He also testified
that Petitioner was heavily medicated on four different medications at the
time of the incident and there was a "significant question about his mental
capacity" at the time of the incident. He opined that Petitioner's condition
had worsened since then and he was unable to care for himself. *Id*. at 110
to ECF No. 11-4 at 4.

On questioning by the court regarding whether Petitioner was
abusing pain medication that he had been prescribed, Dr. Oases testified
that he believed Petitioner had become dependent upon medication

including methadone and Xanax. Petitioner's records reflected that he was receiving medications from more than one prescribing doctor during the time periods at issue. The court inquired whether that was illegal, and Dr. Oases testified that he could not find notes in Petitioner's records reflecting that the prescribing doctors had consulted with each other regarding the medications. He testified that he had considered that Petitioner was engaged in "doctor shopping" in order to obtain pain medication. *Id*. at 12-14.

Petitioner's counsel argued that a downward departure was warranted in light of Dr. Oases' testimony that cast doubt on Petitioner's ability to appreciate the criminal nature of his conduct or conform his conduct to the requirements of the law, and that Petitioner was impaired at the time. *Id*. at 22-23. Counsel also argued that Petitioner required specialized treatment for a mental disorder, needed assistance with everyday activities, the offense was committed in an unsophisticated manner, and it was an isolated event for which Petitioner showed remorse. Counsel further cited Petitioner's age, medical and mental health needs, military service, and PTSD. Counsel argued that such factors supported a sentence of community control and probation. *Id*. at 23-25.

The State argued that the evidence regarding how the incident occurred was contrary to a claim of lack of capacity because Petitioner made eye contact with the victim and continued to try to run him over even after the victim was injured, and then Petitioner fled the scene. *Id*. at 25. The State argued that "maybe" Petitioner's voluntary intoxication "affected something," but it was not a reason to depart downward. The State also pointed out that Petitioner had expressed no real remorse for Ryals' injuries during his testimony. *Id*. at 26.

The court determined that no downward departure was warranted. First, the court found that Petitioner did not lack the ability to appreciate the criminality of his offense, and in fact the evidence (including Petitioner's taped statement) supported that he knew what he was doing. The court observed that while Petitioner may have been taking excessive medication, in Florida voluntary intoxication does not allow a defendant to bypass the criminality of an act. The court was not persuaded that Petitioner would be unable to obtain any necessary specialized treatment while in prison. Finally, the court stated that Petitioner's failure to express any real remorse during his testimony was especially noteworthy. The court sentenced Petitioner to 12 years in prison and 8 years probation for attempted second

degree murder and five years for aggravated assault. *Id*. at 27-28.

Petitioner appealed but subsequently, through counsel, voluntarily dismissed the appeal. ECF No. 11-1 at 149. Petitioner then sought postconviction relief alleging that his sentence was illegal, that his counsel rendered ineffective assistance, and that his plea was involuntary. Following an evidentiary hearing, at which Petitioner was represented by counsel and at which he and his trial counsel testified, the trial court granted relief on the sentencing claim by reducing Petitioner's term of probation to three years. ECF No. 11-3 at 4-14. The court denied the motion as to Petitioner's other claims. *Id*. Petitioner filed a *pro se* motion to withdraw his plea, which the court denied. ECF No. 11-4 at 157-62, 193-97. Petitioner appealed, through counsel, but the only issue raised on appeal was the denial of the motion to withdraw his plea. *Id*. at 244-47, ECF No. 11-5 at 1-7. Counsel argued that Petitioner's plea was based on an illegal sentence (with respect to the term of probation), and noted that Petitioner had alleged ineffective assistance of trial counsel for failure to object to the illegal sentence "which was part of the plea agreement." *Id*. at 5. The State argued in opposition that as found following the evidentiary hearing Petitioner knew that his plea agreement did not contain a specific

sentence that would bind the trial court.  *Id*. at 19.  The first DCA affirmed *per curiam* without opinion.  *Id*. at 36.

The instant habeas corpus petition, which Respondent concedes is timely, followed. Petitioner asserts the following claims: (1) Counsel was ineffective for misadvising petitioner as to the sentence he would receive and the maximum sentence he could receive if he entered an open plea; (2) The state court's decision denying his motion to withdraw his plea was contrary to, or an unreasonable application of, federal law; and (3) Counsel was ineffective for failing to advise Petitioner that he could assert an insanity defense because he was involuntarily intoxicated at the time of the crime.  Petitioner concedes that his third claim was not asserted in state court.   ECF No. 1.  In opposition to the Petition, Respondent argues that Petitioner's claims are unexhausted and without merit.  ECF No. 11. Petitioner argues that he can demonstrate cause for any procedural default pursuant to *Martinez v. Ryan*.  ECF Nos. 1, 15.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III. Standard of Review

For claims that are properly exhausted, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have

reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___

*U.S.* ___, 134 S. Ct. 10, 15 (2013)(quoting *Wood v. Allen*, 558 U.S. 290,

301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief

only if the state court's adjudication of the merits of the federal claim

"resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 s. Ct. at

15 (standard for reviewing claims of legal error by state courts is "highly

deferential").   This standard "recognizes a foundational principle of our

federal system: State courts are adequate forums for the vindication of

federal rights." *Id*.   This highly deferential standard carries special force in

habeas cases asserting ineffective assistance claims: "Especially where a

case involves such a common claim as ineffective assistance of counsel

under *Strickland*—a claim state courts have now adjudicated in countless

criminal cases for nearly 30 years—'there is no intrinsic reason why the

fact that a man is a federal judge should make him more competent, or

conscientious, or learned . . . than his neighbor in the state courthouse.'"

*Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

By entering a voluntary plea, a defendant waives several rights, including the right to a jury trial, to the assistance of counsel at trial, to raise a defense, and to confront his accusers. *Boykin v. Alabama*, 395 U.S. 563, 573 (1989). Further, a voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea, including claims of ineffective-assistance that do not attack the voluntariness of the plea. *See Tollett v. Henderson*,

411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996, 997

(11th Cir. 1992); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

In the guilty plea context, to show prejudice under *Strickland*

Petitioner must show that "there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The

requirement of a showing of prejudice in the guilty-plea context serves "the

fundamental interest in the finality of guilty pleas." *Id*. at 58. The inquiry as

to whether a reasonable probability exists that a defendant would have

insisted on going to trial "should be made objectively, without regard for the

'idiosyncracies of the particular decisionmaker.'" *Id.* at 60 (quoting *Evans v.

Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)).

## IV. Discussion

### A. *Ineffective Assistance Regarding Sentencing Advice*

Petitioner contends that his trial counsel, Daniel Campbell,

"promised" him he would be sentenced to only 2 years of community

control followed by 6 years of probation and under no circumstances could

he be sentenced to more than 75 months in prison. Petitioner claims that

at the time of his plea he believed the statutory maximum sentence was 75

months, based on Campbell's advice.  Petitioner claims that but for

counsel's erroneous advice he would not have entered an open plea.  ECF

No. 1 at 4-6.

Respondent contends that this claim is unexhausted because

Petitioner failed to appeal the court's denial of this ineffective-assistance

claim.  ECF No. 11.  As summarized above, Petitioner appealed only the

issue of the trial court's denial of his motion to withdraw his guilty plea.

Appellate counsel referenced Petitioner's ineffective-assistance claim that

counsel should have objected to the illegal sentence "which was part of the

plea agreement," but that is a different ineffective-assistance claim and it is

clear from the record that the thrust of the claim on appeal was the denial

of the motion to withdraw the plea.  *See* ECF No. 11-5 at 5.  Thus, the

Court agrees with Respondent's assertion that the ineffective-assistance

claim now before the Court is unexhausted and procedurally defaulted.

In his reply to Respondent's response, Petitioner contends that he

can demonstrate cause sufficient to overcome the procedural default

pursuant to *Martinez v. Ryan*, ___U.S. ___, 132 S.Ct. 1309 (2012).  ECF

No. 15.  In *Martinez*, the Supreme Court considered whether ineffective

assistance of counsel at an "initial-review collateral proceeding on a claim

of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 132 S.Ct. 1315. In appropriate circumstances, *Martinez* provides prisoners cause for overcoming procedural default of an ineffective-assistance claim so long as certain narrow conditions are met. *See Trevino v. Thaler*, ___ U.S. ___, 133 S.Ct. 1911, 1918 (2013) (to overcome procedural default, petitioner must have substantial claim of ineffective assistance of trial counsel; be unrepresented or represented by ineffective counsel during state collateral review that is the initial review regarding that claim; and state law requires that an ineffective assistance claim be raised in an initial-review collateral proceeding).

Petitioner makes no cogent argument that his appointed postconviction appellate counsel was ineffective for failing to raise this issue on appeal. Moreover, Petitioner has failed to establish that he has a "substantial claim" of ineffective assistance of trial counsel regarding whether counsel misadvised him about the maximum sentence.

The state trial court rejected this claim following an evidentiary hearing at which Petitioner and his trial counsel testified. The state court concluded as follows:

At the evidentiary hearing, Mr. Daniel Campbell, who was the defendant's trial counsel, testified. Mr. Daniel Campbell testified that he discussed the Criminal Punishment Code ("CPC") scoresheet with the defendant, which included the lowest permissible sentence of seventy-five months and the total maximum sentence of twenty years of incarceration for both counts. Mr. Daniel Campbell also testified that he explained the judge had discretion to sentence him to any term between the seventy-five months and twenty years. Additionally, Mr. Daniel Campbell testified that he informed the defendant regarding the strategy to enter an open plea and request a downward departure sentence. Mr. Daniel Campbell also testified that he did not advise the defendant that he would receive no longer than seventy-five months of incarceration. Furthermore, Mr. Daniel Campbell testified he did not advise the defendant that he would receive a sentence of community control or probation.

Ms. Susan Winterberger testified that she did not tell the defendant he would receive a sentence of two years of community control to be followed by six years of probation. Ms. Susan Winterberger also testified that she did not tell the defendant the longest sentence he would receive was seventy-five months incarceration. Ms. Susan Winterberger testified that she did not hear Mr. Daniel Campbell tell the defendant that he would receive either of such sentences. In fact, Ms. Susan Winterberger testified that she did not promise the defendant he would receive any specific sentence. Ms. Susan Winterberger testified that she observed the defendant and he appeared to be stressed on the day he entered his plea; however, she did not have any concerns regarding his mental health. Ms. Susan Winterberger also testified that the defendant was aware of and agreed with counsel's strategy to request a downward departure sentence.

The defendant testified that Mr. Daniel Campbell "told me my guideline sentence was seventy-five months; that would be the maximum I'd get." The defendant also testified that his

counsel advised him he would be sentenced to two years of community control to be followed by probation if he entered an open plea. Additionally, the defendant testified that Mr. Daniel Campbell "showed me the scoresheet ... said that the maximum scoresheet was seventy-five months and that's what I could get, but he was asking for downward departures." On the other hand, the defendant testified that he was now uncertain of the exact score sheet that he was shown at the time he entered his plea.

ECF No. 11-3 at 8-11.

After evaluating this testimony, the trial court concluded that counsels' testimony was credible. The court found that Petitioner failed to establish either prong of *Strickland* because he was not promised a specific sentence or advised that he would not receive a sentence longer than 75 months. Rather, Petitioner had entered an open plea with the possibility that the sentencing court would depart downward. The court concluded that "the testimony indicates the defendant was aware of and agreed to counsel's strategy to enter an open plea and request a downward departure sentence. However, such a strategy was not as successful as the defendant may have desired." Because Petitioner failed to establish that counsel misadvised him, he did not demonstrate the result of the proceeding would have been different but for counsel's advice. *Id*. at 11.

"Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)). Questions about the credibility of witnesses are questions of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court." *Id.* It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence. *Burt v. Titlow, ___ U.S. ___,* 134 S. Ct. at 15.

Petitioner points to no clear and convincing evidence that would rebut the state court's determination that counsels' testimony regarding their sentencing advice was credible. On this record, that determination cannot be disturbed. Petitioner thus has failed to establish a substantial ineffective-assistance claim sufficient to overcome the procedural default of the claim pursuant to *Martinez*. Even if the claim were preserved for review on the merits, the foregoing establishes that the state court's rejection of the claim was neither contrary to, nor an unreasonable application of,

*Strickland*.  Petitioner therefore is not entitled to federal habeas corpus relief.

## B.  *Withdrawal of Guilty Plea*

Petitioner claims that the state court's decision denying his motion to withdraw guilty plea was contrary to or an unreasonable application of federal law, specifically *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), and *Missouri v. Frye*, 132 S.Ct. 1399 (2012).  However, as Respondent contends, Petitioner never asserted this as a federal constitutional claim in the state courts.  To the extent that Petitioner argues the trial court erred in denying his motion to withdraw plea, his argument presents a state law issue for which federal habeas relief is not available.  A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'").  "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)).

"Questions of state law rarely raise issues of federal constitutional significance, because 'a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)). Federal habeas relief will only be granted for state law errors if the alleged errors were so critical that they rendered the entire trial fundamentally unfair in violation of the right to due process. *Id.*; *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

The state court's decision denying the motion to withdraw rested wholly on state law.  Specifically, the state court held that Petitioner was resentenced pursuant to Fla. R. Crim. P. 3.800 because the sentence of probation originally imposed was incorrect.  The state court held that Rule 3.800, which only corrects an illegal sentence, does not provide an avenue to withdraw a plea.   ECF No. 11-4 at 157-62, 193-97.

Petitioner's appellate counsel asserted that the state court should have granted his motion to withdraw the guilty plea because he pled to an "illegal sentence" and trial counsel did not object to the sentence.   Again, counsel's argument rested wholly on state case law.  *See* ECF No. 11-4 at

246; 11-5 at 30.

Moreover, in denying postconviction relief, as summarized above, the state court concluded that Petitioner entered an "open plea" to no specific sentence.  Thus, even if Petitioner had exhausted this claim as a matter of federal constitutional law in the state courts the record establishes he would not be entitled to federal habeas relief because the claim lacks factual support.  Petitioner's plea was, factually, unrelated to the subsequent illegality of the probationary part of his sentence.  On this record, Petitioner has failed to establish that this claim presents any basis for federal habeas relief.

## C. *Ineffective Assistance Regarding Insanity Defense*

Petitioner argues that his trial counsel was ineffective for failing to advise him that he could assert an insanity defense due to "involuntary" intoxication from prescription medication.  Petitioner points to Dr. Oases' testimony as support for this claim.  ECF No. 1.  Petitioner concedes that this claim is unexhausted, but contends that *Martinez* provides a gateway to assert this claim in federal court.

Initially, Petitioner has failed to make any cogent argument that his postconviction counsel was ineffective under *Strickland* for failing to assert

this claim in state court, as is required to overcome the procedural default pursuant to *Martinez.*  Moreover, Petitioner has failed to present a substantial claim of ineffective assistance of trial counsel regarding an insanity defense.

First, as Respondent points out, Dr. Oases did not testify that Petitioner took the medication in the prescribed dosage and became unexpectedly intoxicated, as is required to establish the defense under state law.  *See* Fla. Stat. § 775.051; *Montero v. State*, 996 So. 2d 888, 891 (Fla. 4th DCA 2008).  Rather, Dr. Oases testified that Petitioner had been using methadone and Xanax extensively for years and had become dependent upon them.  He also conceded that Petitioner's use may have amounted to unlawful "doctor shopping."  *See* ECF No. 11-3 at 12-14.

Second, Petitioner points to nothing in the record that would support a conclusion that he was "insane" due to intoxication within the meaning of Florida law.  Under Florida law, a defendant is not guilty by reason of insanity if, at the time of the offense, he either did not know right from wrong or did not know the nature or consequences of his actions.  *See, e.g., Diaz v. State*, 945 So. 2d 1136, 1151 (Fla. 2006).  Dr. Oases did not testify that Petitioner did not know right from wrong or did not know the

nature or consequences of his actions at the time of the crime. While testifying in mitigation of sentencing Dr. Oases stated that Petitioner's capacity at the time of the crime was impaired that opinion falls far short of providing evidence that would support an insanity defense. *See* ECF No. 11-3 at 110 to ECF No. 11-4 at 4. Counsel cannot be deemed ineffective for failing to advise Petitioner about a defense that was not supported by the evidence. Petitioner thus has failed to establish a substantial ineffective-assistance claim sufficient to overcome the procedural default of the claim pursuant to *Martinez*.

For the foregoing reasons, the Petition should be denied.

## IV. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the

district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court

may direct the parties to submit arguments on whether a certificate should

issue." Thus, if there is an objection to this recommendation by either

party, that party may bring this argument to the attention of the district

judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1) should be **DENIED** and a certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 29th day of November 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.